**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| BROADBAND iTV, INC., | Case No. 6:19-cv-712 |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| AT&T SERVICES, INC., and AT&T COMMUNICATIONS, LLC, | |
| Defendants. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Broadband iTV, Inc. ("BBiTV"), by and through the undersigned counsel, hereby files this complaint ("Complaint") and makes the following allegations of patent infringement relating to U.S. Patent Nos. 10,028,026, 10,349,101, 9,998,791, and 9,648,388 against Defendants AT&T Services, Inc. and AT&T Communications, LLC (collectively, "AT&T") and alleges as follows upon actual knowledge with respect to itself and its own acts and upon information and belief as to all other matters:

## NATURE OF THE ACTION

1.     This is an action for patent infringement.  BBiTV alleges that AT&T infringes U.S. Patent Nos. 10,028,026 (the "'026 Patent"), 10,349,101 (the "'101 Patent"), 9,998,791 (the "'791 Patent"), and 9,648,388 (the "'388 Patent") copies of which are attached hereto as Exhibits A-D (collectively, "the Asserted Patents").

2.     BBiTV alleges that AT&T directly and indirectly infringes the Asserted Patents by making, using, offering for sale, selling and importing, among other things, set-top boxes ("STBs") and mobile device apps that provide certain novel video-on-demand ("VOD") functionalities.  AT&T also induces and contributes to the infringement of others including its users, customers, agents, or other third parties.  BBiTV seeks damages and other relief for

AT&T's direct and indirect infringement of the Asserted Patents.

## THE PARTIES

3.      BBiTV is a Delaware corporation headquartered at 201 Merchant Street, Suite 1830, Honolulu, Hawaii 96813.

4.      BBiTV holds all substantial rights, title and interest in and to the Asserted Patents.

5.      Upon information and belief, Defendant AT&T Services, Inc. is a Delaware corporation with a place of business at 175 E. Houston Street, San Antonio, Texas 78205 and with a registered agent for service of process at CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

6.      On information and belief, Defendant AT&T Communications, LLC is a Delaware limited liability company with a principal place of business at 208 South Akard Street, Dallas, Texas 75202 and with a registered agent for service of process at The Corporation Trust Company, 1209 Orange St., Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

7.      This action for patent infringement arises under the Patent Laws of the United States, 35 U.S.C. § 1 et. seq.  This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1338.

8.      Venue in the Western District of Texas is proper pursuant to 28 U.S.C. §§ 1391(b), (c) and § 1400(b) because AT&T has a regular and established place of business in this District, including at 175 E. Houston, San Antonio, Texas 78205; has committed acts within this District giving rise to this action; and AT&T continues to conduct business in this District, including one or more acts of selling, using, importing, and/or offering for sale infringing products or providing support service to AT&T's customers in this District.  Upon information and belief, AT&T conducts business in this District at, *inter alia*, 1428 Wooded Acres Drive, Suite 120, Waco, Texas 76710; 1515 Hewitt Drive, Suite A, Waco, Texas 76712; 2320 W. Loop 340, Suite 100A, Waco, Texas 76711; 4265 Interstate 35 N., Waco, TX 76705; and 4330 W. Waco Drive, Waco, Texas 76710.

9.     AT&T is subject to this Court's specific and general personal jurisdiction pursuant to due process or the Texas Long Arm Statute, due at least to AT&T's substantial business in this forum, including: (i) business related to infringing acts as alleged herein; or (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.  Within this state, AT&T has used the patented inventions thereby committing, and continuing to commit, acts of patent infringement alleged herein.  In addition, AT&T has derived revenues from its infringing acts occurring within the Western District of Texas.  Further, AT&T is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from goods and services provided to persons or entities in Texas and the Western District of Texas.  Further, AT&T is subject to the Court's personal jurisdiction at least due to its sale of products or services within Texas and the Western District of Texas.  AT&T has committed such purposeful acts or transactions in Texas such that they reasonably should know and expect that they could be haled into this Court because of such activity.

### COUNT I – INFRINGEMENT OF U.S. PATENT NO. 10,028,026

10.     The allegations of paragraphs 1-9 of this Complaint are incorporated by reference as though fully set forth herein.

11.     The '026 Patent, titled "System for addressing on-demand TV program content on TV services platform of a digital TV services provider," issued on July 17, 2018.  A copy of the '026 Patent is attached as Exhibit A.

12.     Pursuant to 35 U.S.C. § 282, the '026 Patent is presumed valid.

13.     Upon information and belief, AT&T makes, uses, offers for sale, and/or sells in the United States and/or imports into the United States products and services that provide AT&T's subscribers with video on-demand ("VOD") services using set-top boxes ("STBs") and mobile device apps (collectively the "Accused '026 Patent Products").  Specifically, AT&T, by and through its various operator subsidiaries, provides Internet-connected STBs such as AT&T

U-verse for receiving, via the Internet, video content to be viewed by VOD system subscribers. Likewise, AT&T provides such mobile device apps, such as the AT&T U-verse App available for iOS devices on Apple's App Store and for Android devices on Google Play that are downloaded to subscribers' Internet-connected devices—including smartphones and tablets—for receiving, via the Internet, video content to be viewed by VOD system subscribers. *See* https://apps.apple.com/us/app/u-verse/id312886438; https://play.google.com/store/apps/details?id=com.att.android.uverse.



14.     Upon information and belief, the Accused '026 Patent Products infringe at least claims 1, 3, 5, 8, and 11 of the '026 Patent in the exemplary manner described below.

15.     As to claim 1, AT&T provides an Internet-connected digital device, including a set-top box for receiving, via the Internet, video content to be viewed by a subscriber of a video-on-demand system. AT&T additionally provides software (*e.g.*, a mobile device app such as AT&T U-Verse) for which a third-party Internet-connected device (*e.g.*, a smartphone or tablet) receives, via the Internet, video content to be viewed by a subscriber of a video-on-demand system. In many cases, AT&T also provides smartphones to its U-Verse subscribers, and encourages U-Verse subscribers to obtain smartphones from AT&T by offering discounts on U-Verse packages to those who also subscribe to a wireless plan from AT&T.









Source: https://www.att.com/tv/packages.html

Take the U-verse experience with you with the U-verse App. Watch Live TV and On Demand shows, manage your DVR, and use the app as a remote control.

With AT&T Data Free TV, stream U-verse Live and On Demand shows anywhere, without using mobile data! Only with AT&T and U-verse.*

Live TV
Watch Live TV in the palm of your hand! Watch even more channels live when connected to your home network.

On Demand
Watch on your schedule! Choose from thousands of On Demand movies and shows from top networks.

My U-verse Homepage
Personalize your U-verse experience by adding your favorite shows, channels, and people to My U-verse Favorites. The new Homepage highlights the shows that you care about most and recommends new shows for you to discover.

Guide
Browse or search your personal TV programming guide to find your favorite shows. Schedule one-time or series recordings on your DVR at home.

Remote Control
Control your home TV receivers with the remote control feature.†

Recordings
Easily manage your scheduled and recorded shows on your U-verse DVR at home.

Settings
Set Parental Controls and Notifications, manage your receivers, find support tools and more.

Requires qualifying device, U-family or higher TV plan and Wi-Fi or data connection. Content may vary by device, TV plan, and viewing location. Data charges may apply.
*DATA FREE TV: Residential U-verse customers and select wireless customers only. Available only in the U.S. (excludes Puerto Rico and U.S. Virgin Islands). Data usage does not count against your data allotments. Exclusions apply and may incur data usage. Eligible Wireless: Requires a compatible device and postpaid data service or eligible prepaid monthly plan, on eligible device. Please see http://www.att.com/prepaidsponsoreddata for a list of eligible AT&T PREPAID monthly plans. Must not have data block on line. AT&T wireless usage subject to AT&T's service terms, conditions, restrictions, and network management practices, including speed reduction. Streaming may not work at reduced speeds. Eligible U-verse: Content may vary by TV package and, viewing location. All functions and programming subject to change at any time. Offer subject to change and may be modified or discontinued at any time without notice.

†U-verse Internet service and qualifying device required.

This app requires Nielsen's proprietary measurement software which will allow you to contribute to market research, like Nielsen's TV Ratings. Please see http://www.nielsen.com/digitalprivacy for more information.

Source: U-verse on Apple App Store, https://apps.apple.com/us/app/u-verse/id312886438

16.     In both cases, AT&T provides an electronic program guide (EPG) as a templatized video-on-demand display, which uses at least one of a plurality of different display templates to which the Internet-connected digital device has access, to enable a subscriber using the Internet-connected digital device to navigate in a drill-down manner through titles by category information in order to locate a particular one of the titles whose associated video content is desired for viewing on the Internet-connected digital device.

**AT&T U-Verse STB EPG:**



**AT&T U-Verse App EPG:**



17.     The EPGs on the Accused '026 Patent Products are used by subscribers to select VOD content.  The EPGs include a templatized VOD display having a first layer that includes at least one of a basic color, logo, or graphical theme to display.  For example, the EPGs include a background screen to provide a black background, digital clock, and graphical theme.

**AT&T U-verse STB:**

First Layer comprising a background screen



**AT&T U-verse App:**

First Layer comprising a background screen



18.     The EPGs on the Accused '026 Patent Products also include a second layer comprising a particular display template from the plurality of different display templates layered on the background screen, wherein the particular display template comprises one or more reserved areas that are reserved for displaying content provided by a different layer of the plurality of layers.  For example, the EPG includes a second layer comprising reserved areas for displaying content provided by a different layer of the plurality of layers.



19.     The EPGs on the Accused '026 Patent Products include a third layer having reserved area content generated using the received video content, the associated metadata, and an associated plurality of images to be displayed in the one or more reserved areas in the particular display template as at least one of text, an image, a navigation link, and a button.  For example, the EPGs include a second layer comprising reserved areas for displaying content in a third layer, such as received video content, the associated metadata, and the associated plurality of images to be displayed in the one or more reserved areas in the particular display template as text, an image, a navigation link, and a button.



20.     The EPGs on the Accused '026 Patent Products allow navigating through titles in a drill-down manner including navigating from a first level of the hierarchical structure of a video-on-demand content menu to a second level of the hierarchical structure to locate the particular one of the titles.  A first template of the plurality of different display templates is used as the particular display template for the templatized display for displaying the first level of the hierarchical structure and a second template of the plurality of different display templates is used as the particular display template for the templatized display for displaying the second level of the hierarchical structure.

First level showing the first display template:





Second level showing the second display template:







21.     The Accused '026 Patent Products receive video content that was uploaded to a Web-based content management system by a content provider device associated with the video content provider via the Internet in a digital video format, along with associated metadata including title information and category information, and along with the associated plurality of images designated by the video content provider, the associated metadata specifying a respective hierarchical location of a respective title of the video content within the electronic program guide to be displayed on the Internet-connected digital device using the respective hierarchically-arranged category information associated with the respective title, wherein at least one of the uploaded associated plurality of images designated by the video content provider is displayed with the associated respective title in the templatized video-on-demand display.

22.     For example, on information and belief, AT&T uses Comcast Technology Solutions, formerly known as Comcast Media Center ("CMC"), as a web-based Content Management System and Distribution Service known as Express Lane to ingest video content and related metadata and images that are used to generate EPGs:



Source: Exhibit F (Comcast, 2013); Exhibit G (Comcast, 2010).

23.     The Accused '026 Patent Products receive from the Express Lane platform the VOD application-readable metadata and images that are associated with respective video content.  Express Lane receives VOD content from content producers and distributes the VOD content to the appropriate VOD system platforms.



Source: https://exl.comcastwholesale.com/terms (last visited 12/10/2019).

24.     The VOD content is received along with VOD metadata, which includes

associated metadata including title information and category information, and along with the associated plurality of images designated by the video content provider, the associated metadata specifying a respective hierarchical location of a respective title.  The EPG uses this category of information designated by the video content provider to locate the title in the hierarchy of the program guide.



Source: Exhibit E, Express Lane User Guide v3.11, p. 20.

25.    The Accused '026 Patent Products display at least one of the uploaded associated plurality of images designated by the video content provider with the associated respective title in the templatized VOD display.

First level showing the first display template:





Second level showing the second display template:





26.     As to claim 3, the plurality of different display templates used by the EPG are used to locate the particular one of the titles in a drill-down manner from a first level of a hierarchical structure of the electronic program guide to a second level of the hierarchical structure of the electronic program guide.  A first of the plurality of display templates is used for

displaying the first level of the electronic program guide.







And a second of the plurality of different display templates is used for displaying the second level of the electronic program guide.





27.    As to claim 5, the associated metadata received along with the video content uploaded to a Web-based content management system by a content provider device associated with the video content provider via the Internet in a digital video format, includes descriptive

data about the video content, such as a short summary of the VOD asset.



Source: Exhibit E, Express Lane User Guide v3.11, p. 18.

> 3. Enter a short summary of the asset into the **Summary Short** field. This is a sentence that provides a short summary of the VOD asset, usually typed in by the provider (e.g. "Fictional romantic tale of a rich girl and poor boy who meet on the ill-fated voyage of the 'un-sinkable' ship"). Spelling, grammar, and capitalization are important as the data typed here displays to the viewer. The maximum length of this field is 255 characters, including punctuation, spaces, alphanumeric and special characters. *(Required)*.

Source: Exhibit E, Express Lane User Guide v3.11, p. 18.

28.     As to claim 8, the Internet-connected device includes a set-top box. AT&T provides an Internet-connected digital device, including a set-top box.



29.     As to claim 11, the Internet-connected device includes a digital phone such as a smartphone. AT&T provides a mobile device app such as AT&T U-Verse to be used with smartphones. In many cases, AT&T also provides smartphones to subscribers of both its U-Verse and mobile services.





Source: https://www.att.com/tv/packages.html

Take the U-verse experience with you with the U-verse App. Watch Live TV and On Demand shows, manage your DVR, and use the app as a remote control.

With AT&T Data Free TV, stream U-verse Live and On Demand shows anywhere, without using mobile data! Only with AT&T and U-verse.*

**Live TV**
Watch Live TV in the palm of your hand! Watch even more channels live when connected to your home network.

**On Demand**
Watch on your schedule! Choose from thousands of On Demand movies and shows from top networks.

**My U-verse Homepage**
Personalize your U-verse experience by adding your favorite shows, channels, and people to My U-verse Favorites. The new Homepage highlights the shows that you care about most and recommends new shows for you to discover.

**Guide**
Browse or search your personal TV programming guide to find your favorite shows. Schedule one-time or series recordings on your DVR at home.

**Remote Control**
Control your home TV receivers with the remote control feature.†

**Recordings**
Easily manage your scheduled and recorded shows on your U-verse DVR at home.

**Settings**
Set Parental Controls and Notifications, manage your receivers, find support tools and more.

Requires qualifying device, U-family or higher TV plan and Wi-Fi or data connection. Content may vary by device, TV plan, and viewing location. Data charges may apply. *DATA FREE TV: Residential U-verse customers and select wireless customers only. Available only in the U.S. (excludes Puerto Rico and U.S. Virgin Islands). Data usage does not count against your data allotments. Exclusions apply and may incur data usage. Eligible Wireless: Requires a compatible device and postpaid data service or eligible prepaid monthly plan. on eligible device. Please see http://www.att.com/prepaidsponsoreddata for a list of eligible AT&T PREPAID monthly plans. Must not have data block on line. AT&T wireless usage subject to AT&T's service terms, conditions, restrictions, and network management practices, including speed reduction. Streaming may not work at reduced speeds. Eligible U-verse: Content may vary by TV package and, viewing location. All functions and programming subject to change at any time. Offer subject to change and may be modified or discontinued at any time without notice.

*U-verse Internet service and qualifying device required.

This app features Nielsen's proprietary measurement software which will allow you to contribute to market research, like Nielsen's TV Ratings. Please see http://www.nielsen.com/digitalprivacy for more information.

Source: U-verse on Apple App Store, https://apps.apple.com/us/app/u-verse/id312886438

30.     AT&T has infringed, and continues to infringe, at least claims 1, 3, 5, 8, and 11 of the '026 Patent in the United States, by making, using, offering for sale, selling and/or importing the Accused '026 Patent Products in violation of 35 U.S.C. § 271(a).

31.     AT&T also has infringed, and continues to infringe, at least claims 1, 3, 5, 8, and 11 of the '026 Patent by actively inducing others to use, offer for sale, and sell the Accused '026 Patent Products.  AT&T's users, customers, agents, or other third parties, who use those devices in accordance with AT&T's instructions, infringe claims 1, 3, 5, 8, and 11 of the '026 Patent, in violation of 35 U.S.C. § 271(a).  Because AT&T intentionally instructs its customers to infringe through training videos, demonstrations, brochures, and user guides, such as those located at: www.att.com; forums.att.com; www.att.com/support, Apple App Store listing for the iOS U-Verse App, Google Play Store listing for the Android U-Verse App, in-app instructions in the iOS and Android U-Verse Apps, AT&T is liable for infringement of the '026 Patent under 35 U.S.C. § 271(b).

32.     AT&T also has infringed, and continues to infringe, at least claims 1, 3, 5, 8, and 11  of the '026 Patent by offering to commercially distribute, commercially distributing, or importing the Accused '026 Patent Products, which are used in practicing the processes or using the systems of the '026 Patent, and constitute a material part of the invention.  For example, AT&T provides mobile device apps to users, who then install those apps on their mobile devices, such as smartphones and tablets.  A mobile device that has been configured to use AT&T's mobile device app to access AT&T's VOD platform infringes claims 1, 3, 5, 8, and 11 of the '026 Patent, in violation of 35 U.S.C. § 271(a).  AT&T knows portions of the Accused '026 Patent Products to be especially made or especially adapted for use in infringement of the '026 Patent, and not to be staple articles, and not to be commodities of commerce suitable for substantial noninfringing use.  AT&T is thereby liable for contributory infringement of the '026 Patent under 35 U.S.C. § 271(c).

33.     AT&T is on notice of its infringement of the '026 Patent by no later than the filing and service of this Complaint.  AT&T also received notice of its infringement of the '026

Patent on December 16, 2019, when BBiTV served AT&T with an infringement notice letter. By the time of trial, AT&T will have known and intended (since receiving such notice) that its continued actions would actively induce and contribute to the infringement of at least claims 1, 3, 5, 8, and 11 of the '026 Patent.

34.	Upon information and belief, AT&T may have infringed and continues to infringe the '026 Patent through other software and devices utilizing the same or reasonably similar functionality, including other versions of the Accused '026 Patent Products.

35.	AT&T's acts of direct and indirect infringement have caused and continue to cause damage to BBiTV. BBiTV is, therefore, entitled to recover damages sustained as a result of AT&T's wrongful acts in an amount that is proven at trial.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 10,349,101

36.	The allegations of paragraphs 1-9 of this Complaint are incorporated by reference as though fully set forth herein.

37.	The '101 Patent, titled "System for addressing on-demand TV program content on TV services platform of a digital TV services provider," issued on July 9, 2019. A copy of the '101 Patent is attached as Exhibit B.

38.	Pursuant to 35 U.S.C. § 282, the '101 Patent is presumed valid.

39.	Upon information and belief, AT&T makes, uses, offers for sale, and/or sells in the United States and/or imports into the United States products and services that provide AT&T's subscribers with VOD services via mobile device apps (collectively the "Accused '101 Patent Products"). Specifically, AT&T provides such mobile device apps, such as the AT&T U-verse App available for iOS devices on Apple's App Store and for Android devices on Google Play that are downloaded to subscribers' Internet-connected devices—including smartphones and tablets—for receiving via the Internet video content to be viewed by a VOD system subscriber. *See* https://apps.apple.com/us/app/u-verse/id312886438; https://play.google.com/store/apps/details?id=com.att.android.uverse.



40.     Upon information and belief, the Accused '101 Patent Products infringe at least claims 1, 3, 6, and 12 of the '101 Patent in the exemplary manner described below.

41.     As to claim 1, the Accused '101 Patent Products perform a method for receiving, via the Internet, video content to be viewed on an Internet-connected digital device (e.g., a smartphone, tablet or computer) associated with a subscriber of a video-on-demand system using a hierarchically arranged interactive electronic program guide.



Source: www.comcasttechnologysolutions.com/resources/vod-ebook

42.     The Accused '101 Patent Products transmit, from the Internet-connected digital device to a television service platform, a request by the subscriber to log in to the video-on-demand system.  For example, the Accused '101 Patent Products allow subscribers to login to access the VOD system.  Part of this process includes transmitting a request from the device to the television service platform via the Internet.



43. The Accused '101 Patent Products generate, via the Internet-connected digital device, in response to a first request by the subscriber after logging in to the video-on-demand system, an interactive electronic program guide (EPG) to be presented to the subscriber as a templatized VOD display on a display for the Internet-connected digital device to access VOD programs previously stored on a video server associated with a television service provider in a digital video format as part of the VOD system.

44. The Internet-connected device has access to a plurality of different display templates for a subscriber with the EPG and the EPG enables subscribers to navigate, in a drill-down manner, through titles by category information in metadata associated with the video content.





45.     The Accused '101 Patent Products allow navigating through the titles in a drill-down manner, e.g., navigating from a first level of a hierarchical structure of the interactive EPG to a second level of the hierarchical structure of the interactive EPG to locate a first title.



46.     The Accused '101 Patent Products track at the Internet-connected digital device, navigation data related to a navigation path taken by the subscriber in navigating through the interactive electronic program guide in the drill-down manner to select the VOD programs for viewing, including the first title and the category information associated with the first title. For example, the Accused '101 Patent Products use MediaKind's technology platform (i.e.,

MediaRoom and MediaFirst) to track navigation data at the Internet-connected device related to a navigation path taken by users navigating through the interactive EPG (e.g., "processing . . . navigation scenarios").

The Ericsson MediaFirst TV Platform builds on Ericsson Mediaroom – acquired from Microsoft last year – the TV technology behind 65 of the world's leading television service providers including AT&T U-verse, Telefonica Vivo and TELUS Optik TV. Ericsson has also announced plans to evolve the Mediaroom platform with new experience across screens and devices. Ericsson MediaFirst TV Platform will be generally available for operators in Q2 2015.

Source: https://www.broadcastbeat.com/ericsson-redefines-tv-experience-with-ericsson-mediafirst-tv-platform-2/ (last visited 12/10/2019)

## What is MediaFirst TV Platform?

MediaFirst is an end-to-end, cloud-based media platform for the creation, management and delivery of next-generation Pay TV. It provides a personalized TV experience engaging the customer in the live, video on demand and subscription content that is suited to their viewing.

By embracing data from all content sources and delivery networks, MediaFirst provides operators the ability to adopt any business model, including traditional Managed TV services, multi-screen 'TV Anywhere' services and pure OTT services.

## Key features

### Personalized User Experience

MediaFirst is personalized TV for the entire family. By utilizing individual profiles, each user can tailor their media consumption experience to their own habits, from live channels to video on demand on every device. On the big screen, MediaFirst combines profiles that finds the programing that everyone wants to watch without Searching through individual profiles.

Channels, in progress media, recommendations and recordings are saved in personalized hubs so users can easily find what they are looking for.

**Profile and Content based Recommendations**

MediaFirst Recommendations help subscribers easily find content they love. A variety of personalized recommendations and options provide superior results based on popularity and relevance. By processing the consumer's viewing habits across all devices and navigation scenarios, MediaFirst applies Machine Learning techniques to provide a powerful and scalable Recommendations Engine. MediaFirst leverages the rich metadata available in the platform to offer content-based recommendations that engage and delight users with always relevant live, VOD and catchup content. Powering robust profile-based algorithms, MediaFirst also learns about the interests of the entire customer base to uniquely refine and target the discovery experience for each individual user.

Source: www.mediakind.com/pdf/MediaFirst%20TV%20Platform.pdf (last visited 12/10/2019)

47.     The Accused '101 Patent Products provide the tracked navigation data for the subscriber to a profiling system for preparing subscriber profile data, wherein the subscriber profile data is to be provided to a targeting system to generate feedback data as to subscriber preferences based at least on the subscriber profile data.  The Accused '101 Patent Products provide the tracked navigation data to MediaKind's technology platform (i.e., MediaRoom and MediaFirst) to generate feedback data as to subscriber preferences based at least on the subscriber profile data.

The Ericsson MediaFirst TV Platform builds on Ericsson Mediaroom – acquired from Microsoft last year – the TV technology behind 65 of the world's leading television service providers including **AT&T U-verse, Telefonica Vivo and TELUS Optik TV.** Ericsson has also announced plans to evolve the Mediaroom platform with new experience across screens and devices. Ericsson MediaFirst TV Platform will be generally available for operators in Q2 2015.

Source: https://www.broadcastbeat.com/ericsson-redefines-tv-experience-with-ericsson-mediafirst-tv-platform-2/ (last visited 12/10/2019)

## What is MediaFirst TV Platform?

MediaFirst is an end-to-end, cloud-based media platform for the creation, management and delivery of next-generation Pay TV. It provides a personalized TV experience engaging   the customer in the live, video on demand and subscription content that  is suited to their viewing.

By embracing data from all content sources and delivery networks, MediaFirst provides operators the ability to adopt any business model, including traditional Managed TV services, multi-screen 'TV Anywhere' services and pure OTT services.

## Key features

**Personalized User Experience**

MediaFirst is personalized TV for the entire family. By utilizing individual profiles, each user can tailor their media consumption experience to their own habits, from live channels to video on demand on every device. On the big screen, MediaFirst combines profiles that finds the programing that everyone wants to watch without Searching through individual profiles.

Channels, in progress media, recommendations and recordings are saved in personalized hubs so users can easily find what they are looking for.

**Profile and Content based Recommendations**

MediaFirst Recommendations help subscribers easily find content they love. A variety of personalized recommendations and options provide superior results based on popularity and relevance. By processing the consumer's viewing habits across all devices and navigation scenarios, MediaFirst applies Machine Learning techniques to provide a powerful and scalable Recommendations Engine. MediaFirst leverages the rich metadata available in the platform to offer content-based recommendations that engage and delight users with always relevant live, VOD and catchup content. Powering robust profile-based algorithms, MediaFirst also learns about the interests of the entire customer base to uniquely refine and target the discovery experience for each individual user.

Source: www.mediakind.com/pdf/MediaFirst%20TV%20Platform.pdf (last visited 12/10/2019)



# The information we collect

- **TV Viewing Information** tells us about which programs you watch and record and similar information about how you use our video services and applications.

## How we collect your information

- We collect it from how you use our products and services;

## How we use your information

- Provide services and improve your customer experience;

- Let you know about service updates, content, offers and promotions that may be of interest to you;

Source: https://about.att.com/csr/home/privacy/full_privacy_policy.html (last visited 12/16/2019)

48.    The Accused '101 Patent Products generate, via the Internet-connected digital device, in response to a second request by the subscriber, an updated interactive electronic program guide to be displayed to the subscriber on the templatized video-on-demand display on the display of the Internet-connected digital device, wherein the updated interactive electronic program guide is prepared based on the feedback data from the targeting system, and wherein the generation of the updated interactive electronic program guide comprises obtaining, via an application program interface of the television service provider, the titles and the category information associated with the titles for the video-on-demand programs to populate the updated interactive electronic program guide.  As illustrated in the example below, the Accused '101 Patent Products generate an updated EPG displayed to the subscriber on the VOD display wherein the updated EPG is prepared based on the feedback data from the targeting system and wherein the generation of the updated EPG comprises the titles and category information associated with the titles of the VOD programs.



49.    The Accused '101 Patent Products provide a templatized VOD display that has been generated in a plurality of layers, comprising: (a) a first layer comprising a background screen to provide at least one of a basic color, logo, or graphical theme to display; (b) a second layer comprising a particular display template from the plurality of different display templates layered on the background screen, wherein the particular display template comprises one or more reserved areas that are reserved for displaying content provided by a different layer of the plurality of layers; and (c) a third layer comprising reserved area content generated using the

received video content, the associated metadata, and an associated plurality of images to be displayed in the one or more reserved areas in the particular display template as at least one of text, an image, a navigation link, and a button.  As illustrated in the example below, the Accused '101 Patent Products generate a templatized VOD display generated in a plurality of layers comprising a first layer comprising a black background screen; a second layer comprising reserved areas for displaying content provided by a different layer of the plurality of layers; and a third layer comprising reserved areas for displaying received video content, the associated metadata, and the associated plurality of images to be displayed in the one or more reserved areas in the particular display template as text, an image, a navigation link, and a button.

**AT&T U-verse App:**



**First Layer comprising a background screen**

**AT&T U-verse App:**



Second Layer comprising reserved areas

**AT&T U-Verse App:**



Third Layer showing reserved areas filled in with text, images, and/or a navigation link

50.     The Accused '101 Patent Products include a first template of the plurality of different display templates, which is used as the particular display template for the templatized VOD display for displaying the first level of the hierarchical structure of the interactive electronic program guide and a second template of the plurality of different display templates, which is used as the particular display template for the templatized VOD display for displaying the second level of the hierarchical structure of the interactive EPG.  As illustrated in the example below, the Accused '101 Patent Products include a first template that is used as the particular display template for displaying the first level of the hierarchical structure of the interactive EPG and a second template that is used as the particular display template for

displaying the second level of the hierarchical structure of the interactive EPG.



51.     As to claim 3, the Accused '101 Patent Products perform the method of claim 1 wherein at least one image is displayed with the associated first title in the templatized video-on-demand display.  AT&T's mobile device app, AT&T U-Verse,  displays at least one image with associated titles.



52.     As to claim 6, the Accused '101 Patent Products perform the method of claim 1 wherein the associated metadata includes descriptive data about the video content.  AT&T's mobile device app, AT&T U-Verse, includes descriptive data about the video content.



53.     As to claim 12, the Accused '101 Patent Products perform the method of claim 1 wherein the Internet-connected digital device is a digital phone.  AT&T, for example, provides software (*e.g.*, a mobile device app such as AT&T U-Verse) for use with smartphones.



54.     AT&T has infringed, and continues to infringe, at least claims 1, 3, 6, and 12 of the '101 Patent in the United States, by making, using, offering for sale, selling and/or importing the Accused '101 Patent Products in violation of 35 U.S.C. § 271(a).  AT&T has infringed, and continues to infringe, at least claim 1, 3, 6, and 12 of the '101 Patent in the United States by performing and/or directing its users to perform one or more steps of the claim and/or conditioning the use of the Accused '101 Patent Products and/or AT&T's VOD service and/or receipt of a benefit upon a user's performance of one or more steps, and establishing the manner or timing of that performance.  AT&T conditions the use of its VOD service upon the performance of one or more steps of the claimed method of the '101 patent by requiring a user to

navigate its system in an infringing manner, and profits from such an arrangement by charging the user a rental fee and/or a subscription fee to access VOD content. AT&T also conditions the receipt of a benefit by a user, i.e., the user benefits by being able to access VOD content of their choice, by requiring the user to navigate its system in an infringing manner. AT&T establishes the manner or timing of a user's performance of one or more steps because the AT&T software limits how the user can interact with the VOD system.

55.     AT&T also has infringed, and continues to infringe, at least claims 1, 3, 6, and 12 of the '101 Patent by actively inducing others to use, offer for sale, and sell the Accused '101 Patent Products. AT&T's users, customers, agents, or other third parties who use those products and/or AT&T's VOD service in accordance with AT&T's instructions infringe claims 1, 3, 6, and 12 of the '101 Patent, in violation of 35 U.S.C. § 271(a). Because AT&T intentionally instructs its customers to infringe through training videos, demonstrations, brochures and user guides, such as those located at: www.att.com; forums.att.com; www.att.com/support, Apple App Store listing for the iOS U-Verse App, Google Play Store listing for the Android U-Verse App, in-app instructions in the iOS and Android U-Verse Apps, AT&T is liable for infringement of the '101 Patent under 35 U.S.C. § 271(b).

56.     AT&T also has infringed, and continues to infringe, at least claims 1, 3, 6, and 12 of the '101 Patent by offering to commercially distribute, commercially distributing, or importing the Accused '101 Patent Products which are used in practicing the processes, or using the systems, of the '101 Patent, and constitute a material part of the invention. AT&T's users, customers, agents, or other third parties who use AT&T's mobile device apps and/or AT&T's VOD service infringe claims 1, 3, 6, and 12 of the '101 Patent, in violation of 35 U.S.C. § 271(a). AT&T knows portions of the Accused '101 Patent Products to be especially made or especially adapted for use in infringement of the '101 Patent, and not to be a staple article, and not to be a commodity of commerce suitable for substantial noninfringing use. AT&T is thereby liable for contributory infringement of the '101 Patent under 35 U.S.C. § 271(c).

57.     AT&T is on notice of its infringement of the '101 Patent by no later than the

filing and service of this Complaint. AT&T also received notice of its infringement of the '101 Patent on December 16, 2019, when BBiTV served AT&T with an infringement notice letter. By the time of trial, AT&T will have known and intended (since receiving such notice) that its continued actions would actively induce and contribute to the infringement of at least claims 1, 3, 6, and 12 of the '101 Patent.

58.     Upon information and belief, AT&T may have infringed and continues to infringe the '101 Patent through other software and devices utilizing the same or reasonably similar functionality, including other versions of the Accused '101 Patent Products.

59.     AT&T's acts of direct and indirect infringement have caused and continue to cause damage to BBiTV. BBiTV is, therefore, entitled to recover damages sustained as a result of AT&T's wrongful acts in an amount that is proven at trial.

**COUNT III – INFRINGEMENT OF U.S. PATENT NO. 9,998,791**

60.     The allegations of paragraphs 1-9 of this Complaint are incorporated by reference as though fully set forth herein.

61.     The '791 Patent, titled "Video-on-demand content delivery method for providing video-on-demand services to TV service subscribers," issued on June 12, 2018. A copy of the '791 Patent is attached as Exhibit C.

62.     Pursuant to 35 U.S.C. § 282, the '791 Patent is presumed valid.

63.     Upon information and belief, AT&T makes, uses, offers for sale, and/or sells in the United States and/or imports into the United States products and services that provide AT&T's subscribers with VOD services using STBs, such as AT&T U-verse (collectively the "Accused '791 Patent Products").



Source: https://www.att.com/u-verse-tv/ (last accessed November 16, 2019).

64. Upon information and belief, the Accused '791 Patent Products infringe at least claims 1, 12, and 18 of the '791 Patent in the exemplary manner described below.

65. As to claim 1, the Accused '791 Patent Products provide a method for video-on-

demand content delivery for providing VOD services to a plurality of television service subscribers via a television service provider system that comprises a VOD content delivery system having one or more computers.  For example, the Accused '791 Patent Products utilize one or more computers including the Comcast Technology Solutions, formerly known as Comcast Media Center ("CMC"), as a web-based Content Management System and Distribution Service for VOD content delivery.



Source: Exhibit F (Comcast, 2013); Exhibit G (Comcast, 2010).

66.     The Accused '791 Patent Products receive digital content, at the one or more computers of the video-on-demand content delivery system of the television service provider system from a Web-based content management system.  For example, AT&T U-verse receives from the CMC Express Lane platform the video-on-demand program content and hierarchical metadata in the form of title, categories and subcategories.



**TERMS AND CONDITIONS**

Content Distribution Service

1. Comcast Cable Communications Management, LLC through its operating division Comcast Wholesale ("Comcast") Video on Demand ("VOD") **Express Lane ("EXL")** provides a mechanism for VOD Customers (as defined in a VOD Services Agreement or similar agreement (the "VOD Agreement")) between Comcast and Customer (each a "VOD Customer") **to upload content and any associated metadata** (collectively "Content") into the **Comcast VOD workflow for delivery to authorized VOD recipients** ("Authorized Systems"). In addition to these Terms of Use, all terms of your VOD Agreement and the Visitor Agreement - Terms of Use (Below) of the Comcast website apply to your use of EXL. By accessing and using the Comcast and EXL websites (collectively, the "EXL Site"), you hereby agree to the following terms, which are subject to change from time to time. By continuing to use the EXL Site, you accept and agree to any modified terms. Customer hereby grants to Comcast the non-exclusive, non-royalty bearing license to distribute the Content through Comcast's VOD service pursuant to the VOD Agreement. Customer warrants and represents that it has all rights necessary to grant these rights, and acknowledges that Comcast will not be responsible for obtaining any third party rights in or to the Content.

https://exl.comcastwholesale.com/terms (last visited June 4, 2019)

4. In the **VOD Categories/Folders** field, select those categories and folders where you would like your asset to appear. These are human-readable categories and sub-categories which affects how the VOD asset is presented to customers (e.g. "Movies/Movies A-Z"). Press and hold the Ctrl key and click if you wish to choose to select multiple items/folders as you scroll through the list. MSOs may customize each folder with mappings called "Destination Folders", which are currently available in our existing VOD process. If the desired folder is not present in the list, follow the process in Appendix D. (Required)

Source: Express Lane User Guide Ver. 3.1, pg. 20

Source: Exhibit E, Express Lane User Guide v3.11, p. 20.

67.     CMC Express Lane is a web-based Content Management and Distribution System that receives VOD content from content producers and distributes the VOD content to the appropriate digital television system platforms.



68.     The received content includes at least the following digital content: (i) a first video content, along with (ii) first metadata, associated with the first video content and usable in a VOD content menu, the first metadata comprising: (1) first title information comprising a first title,  (2) first content provider designated hierarchically arranged category information and subcategory information to specify a location of the first title information for the video content in a predetermined VOD application, the first content provider designated category information and

33

subcategory information associated with the first title information of the first video content using a same hierarchical structure of categories and subcategories as is to be used for placement of the first title information in the predetermined VOD application; and (3) first time information for availability of the first video content for scheduling of viewing of the first video content through the predetermined VOD application.



Source: Exhibit E, Express Lane User Guide v3.11, pp. 18, 20.

69. The Accused '791 Patent Products use first video content that was uploaded to the Web-based content management system by a content provider device associated with a first video content provider via the Internet in a digital video format, along with the associated first metadata including first title information, and first content provider designated hierarchically arranged category information and subcategory information designated by the first video content provider, to specify a hierarchical location of the first title of the first video content within the

VOD content menu using the first category information and first subcategory information associated with the first title information. As illustrated in the example below, the VOD menu shows a hierarchical ordering of categories and sub-categories leading to a listing of titles according to the metadata discussed above.



70. The Accused '791 Patent Products store, at a video server comprising one or more computers and computer-readable memory operatively connected to the one or more computers of the video server, respective video content, including the first video content, wherein the video server is associated with the VOD content delivery system and is configured to supply the respective video content, upon request, for transmission to a set top box operatively connected to TV equipment of a television service subscriber. This video content is stored at AT&T's video servers and VOD content distribution system.



71.     The Accused '791 Patent Products include set top boxes provided by AT&T.  The set top boxes are operatively connected to respective TV equipment of a respective television service subscriber with access to the VOD content menu for navigating through titles, including the first title of the first video content, by hierarchically-arranged category information and subcategory information including at least the first category information and the first subcategory information in order to locate a respective one of the titles whose associated video content is desired for viewing on the respective TV equipment.  The AT&T U-verse STB VOD menu shows a hierarchical ordering of categories and sub-categories leading to a listing of titles.



72.     The Accused '791 Patent Products include a VOD content menu that lists the titles using the same hierarchical structure of category information and subcategory information as was designated by one or more video content providers, including the first video content provider, in the uploaded metadata for the respective video content.



Source: Express Lane User Guide Ver. 3.1, pg. 20

36

Source: Exhibit E, Express Lane User Guide v3.11, p. 20.

73.     The Accused '791 Patent Products include a plurality of different video display templates, including a first video display template, that are accessible to the set top box. The predetermined VOD application accesses the first video display template for generating and displaying the VOD content menu at the respective TV equipment of the respective television service subscriber.

74.     The Accused '791 Patent Products determine, at the predetermined VOD application, which titles are available for selection from the VOD content menu at a respective time based at least in part on respective time information during which the respective video content associated with the respective time information can be accessed through the predetermined VOD application.



Source: Exhibit E, Express Lane User Guide v3.11, p. 18.

75.     The Accused '791 Patent Products retrieve the first video content from the video server in response to (i) the respective television service subscriber selecting, via a control unit in communication with the respective set top box, the first title associated with the first video content from the hierarchically-arranged category information and subcategory information of the VOD content menu, and (ii) the respective set top box transmitting an electronic request for the first video content associated with the selected first title, and transmit the first video content to the respective set top box for display of the first video content on the respective TV equipment of the respective television service subscriber.



76.     As to claim 12, the Accused '791 Patent Products further use at least one of the plurality of different video display templates to generate a templatized video-on-demand display that comprises a background and a template layer having one or more areas for display of metadata provided by the video content provider.



77.     As to claim 18, the Accused '791 Patent Products further use the at least one of the plurality of different video display templates to generate a templatized video-on-demand display that comprises a background screen, as shown above.

78.     AT&T has infringed, and continues to infringe, at least claims 1, 12, and 18 of the '791 Patent in the United States, by making, using, offering for sale, selling and/or importing the Accused '791 Patent Products in violation of 35 U.S.C. § 271(a).  AT&T has infringed, and continues to infringe, at least claims 1, 12, and 18 of the '791 Patent in the United States by performing and/or directing its users to perform one or more steps of the claims and/or

conditioning the use of the Accused '791 Patent Products and/or AT&T's VOD service and/or receipt of a benefit upon a user's performance of one or more steps, and establishing the manner or timing of that performance. AT&T conditions the use of its VOD service upon the performance of one or more steps of the claimed method of the '791 patent by requiring a user to navigate its system in an infringing manner, and profits from such an arrangement by charging the user a rental fee and/or a subscription fee to access VOD content. AT&T also conditions the receipt of a benefit by a user, i.e., the user benefits by being able to access VOD content of their choice, by requiring the user to navigate its system in an infringing manner. AT&T establishes the manner or timing of a user's performance of one or more steps because the AT&T software limits how the user can interact with the VOD system.

79. AT&T also has infringed, and continues to infringe, at least claims 1, 12, and 18 of the '791 Patent by actively inducing others to use, offer for sale, and sell the Accused '791 Patent Products. AT&T's users, customers, agents or other third parties who use those products in accordance with AT&T's instructions infringe claims 1, 12, and 18 of the '791 Patent, in violation of 35 U.S.C. § 271(a). Because AT&T intentionally instructs its customers to infringe through training videos, demonstrations, brochures and user guides, such as those located at: www.att.com; forums.att.com; www.att.com/support, AT&T is liable for infringement of the '791 Patent under 35 U.S.C. § 271(b).

80. AT&T also has infringed, and continues to infringe, at least claims 1, 12, and 18 of the '791 Patent by offering to commercially distribute, commercially distributing, or importing the Accused '791 Patent Products which are used in practicing the processes, or using the systems, of the '791 Patent, and constitute a material part of the invention. AT&T's users, customers, agents, or other third parties who use AT&T's set-top boxes and/or AT&T's VOD service infringe claims 1, 12, and 18 of the '791 Patent, in violation of 35 U.S.C. § 271(a). AT&T knows portions of the Accused '791 Patent Products to be especially made or especially adapted for use in infringement of the '791 Patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. AT&T is thereby liable for contributory

infringement of the '791 Patent under 35 U.S.C. § 271(c).

81.     AT&T is on notice of its infringement of the '791 Patent by no later than the filing and service of this Complaint.  AT&T also received notice of its infringement of the '791 Patent on December 16, 2019, when BBiTV served AT&T with an infringement notice letter. By the time of trial, AT&T will have known and intended (since receiving such notice) that its continued actions would actively induce and contribute to the infringement of at least claims 1, 12, and 18 of the '791 Patent.

82.     Upon information and belief, AT&T may have infringed and continues to infringe the '791 Patent through other software and devices utilizing the same or reasonably similar functionality, including other versions of the Accused '791 Patent Products.

83.     AT&T's acts of direct and indirect infringement have caused and continue to cause damage to BBiTV and BBiTV is entitled to recover damages sustained as a result of AT&T's wrongful acts in an amount that is proven at trial.

## COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 9,648,388

84.     The allegations of paragraphs 1-9 of this Complaint are incorporated by reference as though fully set forth herein.

85.     The '388 Patent, titled "Video-on-demand content delivery system for providing video-on-demand services to TV services subscribers" issued on May 9, 2017.  A copy of the '388 Patent is attached as Exhibit D.

86.     Pursuant to 35 U.S.C. § 282, the '388 Patent is presumed valid.

87.     Upon information and belief, AT&T makes, uses, offers for sale, and/or sells in the United States and/or imports into the United States products and services that provide AT&T's subscribers with VOD services using a set-top box ("STB").  AT&T, for example, provides customers with AT&T U-verse set-top boxes (collectively the "Accused '388 Patent Products").

88.     Upon information and belief, the Accused '388 Patent Products infringe at least claims 1, 3, 6, 13, and 19 of the '388 Patent in the exemplary manner described below.

40

89.     As to claim 1, the Accused '388 Patent Products include a set top box providing video-on-demand services and operatively connected to TV equipment of a TV service subscriber.  AT&T provides its customers with set-top boxes that provide subscribers with access to AT&T U-verse VOD services.  Each set top box is operatively connected to each customer's TV equipment.



90.     The Accused '388 Patent Products receive, at the set-top box, via a closed system from a video-on-demand content delivery system comprising one or more computers and computer-readable memory operatively connected to the one or more computers, respective video-on-demand application-readable metadata that is associated with respective video content and is usable to generate a video-on-demand content menu.  AT&T U-verse set-top boxes are available to AT&T U-verse cable TV subscribers.  Such subscribers receive at their AT&T U-verse set-top boxes via the AT&T U-verse network from a VOD content delivery system, VOD application-readable metadata that is associated with respective video content and usable to generate a VOD content menu.



Source: Exhibit E, Express Lane User Guide v3.11, p. 20.

91.     The Accused '388 Patent Products receive video content that was uploaded to a Web-based content management system by a respective content provider device associated with a respective video content provider via the Internet in a digital video format along with respective specified metadata including respective title information, category information, and subcategory information designated by the respective video content provider to specify a respective hierarchical location of a respective title of the respective video content within the VOD content menu displayed on the TV equipment, wherein the respective VOD application-readable metadata is generated according to the respective specified metadata.  AT&T U-verse receives from the CMC Express Lane platform the video-on-demand application-readable metadata that is associated with respective video.  CMC Express Lane is a web-based Content Management and Distribution System that receives VOD content from content producers and distributes the VOD content to the appropriate digital television system platforms.



Source: Exhibit F (Comcast, 2013); Exhibit G (Comcast, 2010).

**TERMS AND CONDITIONS**

Content Distribution Service

1. Comcast Cable Communications Management, LLC through its operating division Comcast Wholesale ("Comcast") Video on Demand ("VOD") Express Lane ("EXL") provides a mechanism for VOD Customers (as defined in a VOD Services Agreement or similar agreement (the "VOD Agreement")) between Comcast and Customer (each a "VOD Customer") to upload content and any associated metadata (collectively "Content") into the Comcast VOD workflow for delivery to authorized VOD recipients ("Authorized Systems"). In addition to these Terms of Use, all terms of your VOD Agreement and the Visitor Agreement - Terms of Use (Below) of the Comcast website apply to your use of EXL. By accessing and using the Comcast and EXL websites (collectively, the "EXL Site"), you hereby agree to the following terms, which are subject to change from time to time. By continuing to use the EXL Site, you accept and agree to any modified terms. Customer hereby grants to Comcast the non-exclusive, non-royalty bearing license to distribute the Content through Comcast's VOD service pursuant to the VOD Agreement. Customer warrants and represents that it has all rights necessary to grant these rights, and acknowledges that Comcast will not be responsible for obtaining any third party rights in or to the Content.

https://exl.comcastwholesale.com/terms (last visited June 4, 2019)

4. In the VOD Categories/Folders field, select those categories and folders where you would like your asset to appear. These are human-readable categories and sub-categories which affects how the content is presented to customers (e.g. "Movies/Movies A-Z"). Press and hold the Ctrl key and click if you wish to choose to select multiple items/folders as you scroll through the list. MSOs may customize each folder with mappings called "Destination Folders", which are currently available in our existing VOD process. If the desired folder is not present in the list, follow the process in Appendix D. (Required)

Source: Express Lane User Guide
Ver. 3.1, pg. 20

43



Source: Exhibit E, Express Lane User Guide v3.11, pp. 18, 20.

92.     The Accused '388 Patent Products provide, to the TV subscriber at the set-top box, the VOD content menu for navigating through titles, including the respective titles of the respective video content, in a drill-down manner by category information and subcategory information in order to locate a particular one of the titles whose associated video content is desired for viewing on the TV equipment.





93.     In the Accused '388 Patent Products, the VOD content menu lists the titles using the same hierarchical structure of respective category information and subcategory information as was designated by the respective video content provider in the respective specified metadata for the respective video content.



Source: Exhibit E, Express Lane User Guide v3.11, p. 20.

94.     In the Accused '388 Patent Products, a plurality of different video display templates are accessible to the set-top box, and the VOD content menu is generated using at least one of the plurality of different video display templates and based at least upon the respective specified metadata.



95.     The Accused '388 Patent Products transmit in response to the TV service subscriber selecting, via a control unit in communication with the set-top box, a first respective title associated with a first video content from the hierarchical structure of respective category

45

information and subcategory information of the VOD content menu using drill-down navigation, the selection to the set-top box for display on the TV equipment, and receive, at the set-top box, the first video content for display on the TV equipment of the TV service subscriber, wherein in response to the selection the first video content was retrieved from a video server associated with the VOD content delivery system. The selected VOD program is transmitted to, received by and displayed on the TV connected to the AT&T U-verse STB.



96.     As to claim 3, the Accused '388 Patent Products are programmed to allow the navigation through titles in a drill-down manner by navigation from a first level of the hierarchical structure of the video-on-demand content menu to a second level of the hierarchical structure to locate the particular one of the titles. The Accused '388 Patent Products use a first template of the plurality of different video display templates for displaying the first level of the hierarchical structure and a second template for displaying the second level of the hierarchical structure.



97.     As to claim 6, some of the plurality of different video display templates used by the Accused '388 Patent Products correspond to different levels of the hierarchical structure of respective category information and subcategory information, as shown above.

98.     As to claim 13, the Accused '388 Patent Products are further programmed to generate, using at least one of the plurality of different video display templates, a templatized video-on-demand display that comprises a background and a template layer having one or more areas for display of metadata provided by the video content provider.



99.     As to claim 19, the Accused '388 Patent Products are further programmed to generate a templatized video-on-demand display that comprises a background screen using at least one of the plurality of different video display templates, as shown above.

100.    AT&T has infringed, and continues to infringe, at least claims 1, 3, 6, 13, and 19 of the '388 Patent in the United States, by making, using, offering for sale, selling and/or importing the Accused '388 Patent Products in violation of 35 U.S.C. § 271(a).

101.    AT&T also has infringed, and continues to infringe, at least claims 1, 3, 6, 13, and 19 of the '388 Patent by actively inducing others to use, offer for sale, and sell the Accused '388 Patent Products.  AT&T's users, customers, agents or other third parties who use those devices in accordance with AT&T's instructions infringe claims 1, 3, 6, 13, and 19 of the '388 Patent, in

violation of 35 U.S.C. § 271(a).  Because AT&T intentionally instructs its customers to infringe through training videos, demonstrations, brochures and user guides, such as those located at: www.att.com; forums.att.com; www.att.com/support, AT&T is liable for infringement of the '388 Patent under 35 U.S.C. § 271(b).

102.    AT&T is on notice of its infringement of the '388 Patent by no later than the filing and service of this Complaint.  AT&T also received notice of its infringement of the '388 Patent on December 16, 2019, when BBiTV served AT&T with an infringement notice letter. By the time of trial, AT&T will have known and intended (since receiving such notice) that its continued actions would actively induce and contribute to the infringement of at least claims 1, 3, 6, 13, and 19  of the '388 Patent.

103.    Upon information and belief, AT&T may have infringed and continues to infringe the '388 Patent through other software and devices utilizing the same or reasonably similar functionality, including other versions of the Accused '388 Patent Products.

104.    AT&T's acts of direct and indirect infringement have caused and continue to cause damage to BBiTV and BBiTV is entitled to recover damages sustained as a result of AT&T's wrongful acts in an amount that is proven at trial.

# PRAYER FOR RELIEF

WHEREFORE, BBiTV respectfully prays that the Court enter judgment in its favor and against AT&T as follows:

  a.  A judgment that AT&T has infringed one or more claims of the '026 Patent literally and/or under the doctrine of equivalents directly and/or indirectly by inducing infringement and/or by contributory infringement;

  b.  A judgment that AT&T has infringed one or more claims of the '101 Patent literally and/or under the doctrine of equivalents directly and/or indirectly by inducing infringement and/or by contributory infringement;

  c.  A judgment that AT&T has infringed one or more claims of the '791 Patent literally and/or under the doctrine of equivalents directly and/or indirectly by inducing infringement and/or by contributory infringement;

  d.  A judgment that AT&T has infringed one or more claims of the '388 Patent literally and/or under the doctrine of equivalents directly and/or indirectly by inducing infringement;

  e.  That for each Asserted Patent this Court judges infringed by AT&T this Court award BBiTV its damages pursuant to 35 U.S.C. § 284 and any royalties determined to be appropriate;

  f.  That this Court award BBiTV prejudgment and post-judgment interest on its damages;

  g.  That BBiTV be granted its reasonable attorneys' fees in this action;

  h.  That this Court award BBiTV its costs; and

   i.  That this Court award BBiTV such other and further relief as the Court

deems proper.

**DEMAND FOR JURY TRIAL**

  Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, BBiTV demands a trial

by jury for all issues so triable.


Date: December 17, 2019    /s/ Robert Kramer w/permission Wesley Hill
               Robert F. Kramer (*pro hac vice* to be filed)
               California State Bar No. 181706
               rkramer@feinday.com
               M. Elizabeth Day (*pro hac vice* to be filed)
               California State Bar No. 177125
               eday@feinday.com
               David Alberti (*pro hac vice* to be filed)
               California State Bar No. 220625
               dalberti@feinday.com
               Sal Lim (*pro hac vice* to be filed)
               California State Bar No. 221836
               slim@feinday.com
               Marc Belloli (*pro hac vice* to be filed)
               California State Bar No. 244290
               mbelloli@feinday.com
               Lawrence G. McDonough
               California State Bar No. 218364
               lmcdonough@feinday.com
               Hong Lin (*pro hac vice* to be filed)
               California State Bar No. 249898
               hlin@feinday.com
               Jeremiah A. Armstrong (*pro hac vice* to be filed)
               California State Bar No. 253705
               jarmstrong@feinday.com
               **FEINBERG DAY KRAMER ALBERTI**
               **LIM TONKOVICH & BELLOLI LLP**
               577 Airport Blvd., Suite 250
               Burlingame, CA 94010
               Phone: 650-825-4300
               Fax: 650-460-8443

               Wesley Hill
               Texas Bar No. 24032294
               Andrea L. Fair

Texas Bar No. 24078488
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, Texas 75604
(903) 757-6400 (main line)
(903) 757-2323 (facsimile)
wh@wsfirm.com
andrea@wsfirm.com

Attorneys for Plaintiff Broadband iTV, Inc.